TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
International Narcotics,
    Money Laundering and Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3667
    Facsimile: (213) 894-0141
    E-mail: ian.yanniello@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT
7/6/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: JB   DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-cr-00311-FMO |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT FOR DEFENDANT RUDOLPH PETERSEN |
| RUDOLPH PETERSEN, | |
| Defendant. | |

1. This constitutes the plea agreement between RUDOLPH PETERSEN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

    a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit 1 or a

substantially similar form, which charges defendant with Bribery Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(B).

        b.      Not contest facts agreed to in this agreement.

        c.      Abide by all agreements regarding sentencing contained in this agreement.

        d.      Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.      Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f.      Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        g.      Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

        3.      Defendant further agrees to cooperate fully with the USAO, the Department of Homeland Security, Homeland Security Investigations ("DHS"), and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

        a.      Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

        b.      Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

        c.      Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.     For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated March 19, 2020 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

## THE USAO'S OBLIGATIONS

5.     The USAO agrees to:

  a.    Not contest facts agreed to in this agreement.

  b.    Abide by all agreements regarding sentencing contained in this agreement.

  c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

6.     The USAO further agrees:

  a.    Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information.  Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called

by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

      b.    Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

      c.    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

      d.    If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

**DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION**

7.    Defendant understands the following:

      a.    Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

      b.    Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

    c. Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

    d. At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

    e. The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

## NATURE OF THE OFFENSE

8. Defendant understands that for defendant to be guilty of the crime charged in count one, that is, Bribery Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(B), the following must be true: (a) defendant was an agent of a state or local government, or any agency of that government; (b) defendant solicited, demanded, accepted, or agreed to accept anything of value from another person; (c) defendant did so corruptly with the intent to be influenced or rewarded in connection with some business, transaction, or series of transactions of the state or local government, or agency of that government; (d) the business, transaction, or series of transactions involved anything of a value of $5,000 or more; and (e) the state or local government, or agency of that government, in a one-year period, received benefits of more than $10,000 under any federal program involving a grant or other assistance.

## PENALTIES

9. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 666(a)(1)(B), is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss

resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

11. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

13. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

From approximately October 2016 to approximately August 5, 2020, defendant served as a police officer with the Montebello Police Department ("MPD") in Los Angeles County, within the Central District of California. As a police officer, defendant enforced local and state criminal laws. In his capacity as a police officer, defendant had access to a law enforcement database known as "CLETS," which pulls information from a variety of state and federal government agencies, including the California Department of Justice, California Department of Motor Vehicles, and the Federal Bureau of Investigation.

From in or around December 2018 to approximately August 5, 2020, defendant solicited, agreed to accept, and accepted numerous cash bribes from an individual ("Co-Schemer 2") who sought to influence defendant in the performance of defendant's official duties as a police officer. During the scheme, defendant knew Co-Schemer 2 was a gang member and a narcotics trafficker, and nonetheless accepted at least $14,000 in bribes to assist Co-Schemer 2, Co-Schemer 1, and others.

Specifically:

In or around mid-2018, defendant attended a dinner with Co-Schemer 2. Based on prior meetings, Co-Schemer 2 knew that defendant was a police officer with MPD and believed that defendant had the ability to access records related to federal law enforcement investigations. During the dinner, Co-Schemer 2 stated that he could put defendant "on his payroll" because he would have future work for a police officer. At

the end of the dinner, Co-Schemer 2, through an intermediary, gave defendant $500 and told defendant Co-Schmer 1 wanted to "juice [him] up."

In or around December 2018, Co-Schemer 2 contacted defendant to "discuss some jobs." At the time, Co-Schemer 2 offered defendant $10,000 to protect and escort a truck containing a shipment of drugs to make sure the vehicle arrived at its intended destination ("Escort Job 1"). Co-Schemer 2 and defendant discussed the specifics of Escort Job 1, including that defendant would act as a "decoy" if law enforcement attempted to intervene or stop the vehicle, or if someone attempted to rob the shipment. Co-Schemer 2 told defendant to wear his police uniform, bring a gun, and to use an unmarked police vehicle to escort the drug shipment. At the time, defendant knew the shipment would contain illegal drugs, which defendant believed would be illegally grown marijuana. Defendant agreed to accept a bribe payment of at least $10,000 from Co-Schemer 2 for defendant's agreement to protect Co-Schemer 2's drug shipment from law-enforcement activity and others.

At Co-Schemer 2's direction, defendant and Co-Schemer 2 communicated about Escort Job 1 using one or more encrypted phone applications. In or around March 2019, defendant traveled to Co-Schemer 2's residence near Rowland Heights, California. Defendant drove his personal vehicle, which he equipped with takedown lights to create the appearance that his personal vehicle was an unmarked police car. Defendant was armed with a firearm at the time, and he wore a security officer uniform that resembled an official police uniform. At Co-Schemer 2's direction, defendant met a white U-Haul truck at a location in or around Fontana, California, and successfully escorted the truck to a secondary location off the California State Route 60 freeway. Defendant returned to Co-Schemer 2's residence where Co-Schemer 2 gave defendant a paper bag filled with $10,000.

Defendant escorted at least one additional drug shipment for Co-Schemer 2.

Shortly after completing Escort Job 1, Co-Schemer 2 and defendant discussed other work. Among other things, Co-Schemer 2 told defendant that Co-Schemer 2 was

involved in the drug industry and needed a police officer to investigate whether law enforcement was investigating Co-Schemer 2 or his business associates. Co-Schemer 2 told defendant that law enforcement recently intercepted a cocaine shipment. Co-Schemer 2 suspected that a person involved in the cocaine transaction ("Individual 1") was a "snitch" and was providing information to law enforcement. In exchange for cash payments, defendant agreed to access sensitive law enforcement databases on Co-Schemer 2's behalf.

Using an encrypted phone application, Co-Schemer 2 sent defendant personal information belonging to Individual 1, including name and date of birth. On or about May 11, 2019, defendant used the CLETS database to search for information related to Individual 1 and subsequently reported the results to Co-Schemer 2. Over the course of the scheme, Co-Schemer 2 provided defendant with names, dates of birth, and other personal information belonging to other people he suspected were cooperating with law enforcement. After receiving the information, defendant would run some of the names through the CLETS database and then report the results to Co-Schemer 2. Co-Schemer 2 paid defendant $500-$1000 each time defendant accessed law enforcement databases on Co-Schemer 2's behalf.

On or about September 16, 2020, defendant met with Co-Schemer 1 and Co-Schemer 2 at Co-Schemer 2's residence in Diamond Bar, California. At the time, Co-Schemer 1 showed defendant a GPS tracking device, which Co-Schemer 1 found attached to his vehicle. Co-Schemer 1 indicated he had found a similar device on a white van that he and Co-Schemer 2 used. Co-Schemer 2 paid defendant $1,000 to investigate whether the tracking devices belonged to a state or federal law enforcement agency.

Between 2018 and 2020, including both annually and for each 12-month period relevant to defendant's conduct herein, defendant's agency, the MPD, received more than $10,000 under federal programs involving grants and other assistance.

## SENTENCING FACTORS

14. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

15. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. § 2C1.1(a)(1) |
| More Than One Bribe: | +2 | U.S.S.G. § 2C1.1(b)(1) |
| Bribes More Than $6,500 but not more than $15,000 | +2 | U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(B) |
| Public Official in Sensitive Position | +4 | U.S.S.G. § 2C1.1(b)(3) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

16. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

18. Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.      The right to persist in a plea of not guilty.

      b.      The right to a speedy and public trial by jury.

      c.      The right to be represented by counsel –- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel –- and if necessary have the Court appoint counsel –- at every other stage of the proceeding.

      d.      The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.      The right to confront and cross-examine witnesses against defendant.

      f.      The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

      g.      The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

      h.      Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## **WAIVER OF APPEAL OF CONVICTION**

19.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## **LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE**

20.    Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 19 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the

following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

21. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

22. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute

of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

24. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

25. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

    a. If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

    b. The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements

concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

        c.     The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

        d.     In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one –- not the prosecutor, defendant's attorney, or the Court –- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

## **NO ADDITIONAL AGREEMENTS**

29. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//

**PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING**

30. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

/s/ Ian V. Yanniello                                           June 29, 2021
IAN V. YANNIELLO                                               Date
Assistant United States Attorney

/s/ Rudolph Petersen                                           6-14-21
RUDOLPH PETERSEN                                               Date
Defendant

                                                               6/14/21
STEVE ESCOVAR                                                  Date
Attorney for Defendant RUDOLPH
PETERSEN

**CERTIFICATION OF DEFENDANT**

I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to

me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          6-14-21
RUDOLPH PETERSEN                         Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am RUDOLPH PETERSEN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          6/14/21
STEVE ESCOVAR                            Date
Attorney for Defendant RUDOLPH
PETERSEN

# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>RUDOLPH PETERSEN,<br><br>          Defendant. | No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 666(a)(1)(B): Bribery Concerning Programs Receiving Federal Funds] |

The Acting United States Attorney charges:

[18 U.S.C. § 666(a)(1)(B)]

From in or around December 2018 to on or about August 5, 2020, in Los Angeles County, within the Central District of California, defendant RUDOLPH PETERSEN, a police officer and an agent of the Montebello Police Department, a local government agency that received in any one-year period, including in calendar years 2018, 2019, and 2020, benefits in excess of $10,000 under a federal program involving a grant and other assistance, corruptly accepted and agreed to accept something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the Montebello Police Department, having a value of $5,000 or more.  Specifically, defendant PETERSEN agreed to accept

bribe payments of at least $14,000 from a person, intending to be influenced and rewarded in connection with taking official action to protect the person's illegal enterprise from law enforcement activity.

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

SHAWN J. NELSON
Assistant United States Attorney
Chief, International Narcotics, Money Laundering and Racketeering Section

BENEDETTO L. BALDING
Assistant United States Attorney
Deputy Chief, International Narcotics, Money Laundering and Racketeering Section

IAN V. YANNIELLO
Assistant United States Attorney
International Narcotics, Money Laundering and Racketeering Section